IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

BASHLON LUSTER,

    Plaintiff,

v.                                                                               Case No. 12-cv-00376

KLEEN TEST PRODUCTS CORPORATION

and

NEIL CHRISTENSEN

    Defendants.

## COMPLAINT

COMES NOW Plaintiff Bashlon Luster, by and through his attorneys, PETERSON, JOHNSON & MURRAY, S.C., and files this complaint under 42 U.S.C. §§ 1981 and 1988 against defendants Kleen Test Products Corporation and Neil Christensen.

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. §§ 1981 and 1988 to redress unlawful racial harassment, a racially hostile workplace and retaliation for complaining about it.

### JURISDICTION AND VENUE

2. This court has jurisdiction over plaintiff's federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This court has supplemental jurisdiction over plaintiff's Wisconsin state law claims pursuant to 28 U.S.C. § 1367(a).

3. The unlawful practices alleged herein were committed within the State and Eastern District of Wisconsin. Venue of this action is vested in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

4. Plaintiff Bashlon Luster (Luster) was employed by Respondent Kleen Test Products Corporation as a material handler. He is African-American.

5. Respondent Kleen Test Products Corporation (KTPC) is a corporation incorporated under the laws of the State of Wisconsin. KTPC's principal office is located at 1611 Sunset Road in Port Washington, Wisconsin. KTPC's registered agent is F&L Corporation, which is located at 777 East Wisconsin Avenue in Milwaukee, Wisconsin.

6. Neil Christensen (Christensen) is currently employed by KTPC; he was Luster's immediate supervisor. Christensen is white.

## FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

7. KTPC hired Luster as a material handler in or about July 2010 to work in its facility in Mequon, Wisconsin.

8. At all relevant times, Luster was fully qualified for his job.

9. At all relevant times, Luster performed his job duties satisfactorily.

10. During 2010, Luster asked Christensen, his immediate supervisor, if he was able to work overtime on Saturday. Christensen responded, "No. But you can come over to my house and be my nigger and wash my car and mow my yard."

11. Luster reported the racially harassing statement to Kelly Peterson, who works in human resources. KTPC took no meaningful steps to address Luster's racial harassment complaint.

12. Shortly after reporting the racial harassment, KTPC began retaliating against Luster.

   a. For example, company policy provides that employees are to be randomly drug tested once every year. After his complaint, Luster was drug tested approximately once a month. No similarly situated non-complaining employee was drug tested as frequently as Luster.

   b. As for another example, prior to his complaint, Luster frequently spoke with supervisors about various work related matters. After his complaint, Luster was ostracized. KTPC directed its employees, in particular its supervisory employees, to treat Luster more harshly and less favorably than its non-complaining employees.

   c. As for another example, after his complaint, Luster received negative discipline that was either (1) unwarranted or (2) overlooked for non-complaining employees. The discipline Luster received was unwarranted, pretextual and intentionally retaliatory.

   d. KTPC terminated Luster in retaliation for his racial harassment complaint against Christensen.

13. KTPC lacks effective equal employment opportunity policies and negligently fails to train and supervise its supervisory employees, like Christensen.

14. KTPC's failure to implement effective equal employment opportunity policies has resulted in the racial harassment, racially hostile workplace and retaliation that Luster experienced.

15. KTPC engaged in a pattern and practice of retaliating against Luster for complaining about Christensen's racial harassment, without limitation to creating and maintaining a hostile working environment and firing Luster.

16. KTPC's general practice of retaliation was so common and well settled that it constitutes company policy.

## FIRST CAUSE OF ACTION: RACIAL HARASSMENT
## UNDER 42 U.S.C. § 1981
## AGAINST EACH DEFENDANT

17. Luster incorporates here all previous paragraphs.

18. 42 U.S.C. § 1981(a) provides that all persons shall have the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

19. 42 U.S.C. § 1981(b) provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

20. When Christensen made the racially harassing statement, "[Luster] can come over to my house and be my nigger and wash my car and mow my yard," he denied Luster the full and equal enjoyments of all benefits, privileges, terms and conditions of his employment.

21. At the time Christensen racially harassed Luster, well established were the laws prohibiting racial harassment in the workplace. It was clear to a reasonable supervisor in Christensen's position, that his conduct violated Luster's rights and was unlawful.

22. When Christensen racially harassed Luster he knew the immediate, practical and tangible materially adverse result would include (without limitation) creating a hostile working environment for Luster.

23. Christensen's racially harassing actions were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Luster's rights as guaranteed by 42 U.S.C. § 1981.

24. Christensen desired to inflict severe emotional distress on Luster and/or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

25. KTPC condoned a racially hostile workplace in violation of 42 U.S.C. § 1981 when it created a hostile workplace for Luster because he complained about Christensen's racial harassment and failed to take any steps to protect Luster's statutorily guaranteed rights to be free from racial harassment and hostility in the workplace.

26. When KTPC condoned a racially hostile workplace, it denied Luster the full and equal enjoyments of all benefits, privileges, terms and conditions of his employment.

27. As a direct, foreseeable, and proximate result of defendants' intentional illegal racial harassment, Luster has suffered injuries, damages, and other losses, without limitation to lost wages and benefits and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

28. Luster requests relief as hereinafter provided.

# SECOND CAUSE OF ACTION: RACIALLY HOSTILE WORKPLACE
# UNDER 42 U.S.C. § 1981
# AGAINST EACH DEFENDANT

29. Luster incorporates here all previous paragraphs.

30. 42 U.S.C. § 1981(a) provides that all persons shall have the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

31. 42 U.S.C. § 1981(b) provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

32. When Christensen made the racially harassing statement, "[Luster] can come over to my house and be my nigger and wash my car and mow my yard," he denied Luster the full and equal enjoyments of all benefits, privileges, terms and conditions of his employment.

33. KTPC condoned a racially hostile workplace in violation of 42 U.S.C. § 1981 when it created a hostile workplace for Luster because he complained about Christensen's racial harassment and failed to take any steps to protect Luster's statutorily guaranteed rights to be free from racial harassment and hostility in the workplace.

34. At the time defendants created and maintained racially hostile workplace for Luster, well established were the laws prohibiting racial hostility in the workplace. It was clear to any reasonable supervisor or employer that their racially hostile conduct violated Luster's rights and was unlawful.

35. There exists a causal connection between Luster's protected activities and KTPC's materially adverse actions, without limitation to the temporal proximity between the date

when Luster complained to human resources and the date KTPC began retaliating against Luster.

36. When KTPC retaliated against Luster because he complained about Christensen's racial harassment, KTPC knew the immediate, practical and tangible materially adverse result would include (without limitation) creating a hostile working environment for Luster.

37. KTPC's actions in creating and maintaining a racially hostile workplace were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Luster's rights as guaranteed by 42 U.S.C. § 1981.

38. Defendants desired to inflict severe emotional distress on Luster and/or knew that severe emotional distress would be certain or substantially certain to result from their conduct.

39. As a direct, foreseeable, and proximate result of defendants' intentional illegal creation and maintenance of a racially hostile workplace, Luster has suffered injuries, damages, and other losses, without limitation to lost wages and benefits and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

40. Luster requests relief as hereinafter provided.

# THIRD CAUSE OF ACTION: RETALIATION
# UNDER 42 U.S.C. § 1981
# AGAINST KLEEN TEST PRODUCTS CORPORATION

41.     Luster incorporates here all previous paragraphs.

42.     42 U.S.C. § 1981(a) provides that all persons shall have the same right to make and enforce contracts and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.

43.     42 U.S.C. § 1981(b) provides that the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

44.     KTPC retaliated against Luster because he complained about Christensen's racial harassment.

45.     At the time KTPC retaliated against Luster for complaining about Christensen's racial harassment, well established were the laws prohibiting retaliation. It was clear to any reasonable employer that its retaliatory conduct violated Luster's rights and was unlawful.

46.     There exists a causal connection between Luster's protected activities and KTPC's materially adverse actions, without limitation to the temporal proximity between the date when Luster complained to human resources and the date KTPC began retaliating against Luster.

47.     When KTPC retaliated against Luster because he complained about Christensen's racial harassment, KTPC knew the immediate, practical and tangible materially adverse result would include (without limitation) creating a hostile working environment for Luster.

48. KTPC created a hostile working environment for Luster because he complained about Christensen's racial harassment.

49. KTPC's retaliatory actions were taken in malicious, willful, wanton, deliberate indifference to, and reckless disregard of Luster's rights as guaranteed by 42 U.S.C. § 1981.

50. KTPC treated Luster less favorably and more harshly than non-complaining employees in the terms, conditions, benefits, and privileges of Luster's employment because he complained about Christensen's racial harassment.

51. KTPC desired to inflict severe emotional distress on Luster and/or knew that severe emotional distress would be certain or substantially certain to result from its conduct.

52. As a direct, foreseeable, and proximate result of KTPC's intentional illegal retaliation, Luster has suffered injuries, damages, and other losses, without limitation to lost wages and benefits and emotional distress. These injuries and damages continue into the present and will continue into the foreseeable future.

53. Luster requests relief as hereinafter provided.

## FOURTH CAUSE OF ACTION:
## NEGLIGENT TRAINING AND SUPERVISION
## UNDER WISCONSIN STATE LAW
## AGAINST KLEEN TEST PRODUCTS CORPORATION

54. Luster incorporates here all previous paragraphs.

55. KTPC knew or should have known that its supervisors would subject African-American employees to racial harassment, retaliation and other unlawful acts without adequate training or supervision.

56. KTPC had a duty to train and supervise its employees in diversity training relating to racial harassment, retaliation and other unlawful acts.

57. KTPC failed to adequately train its employees, without limitation to Christensen, in diversity training relating to racial harassment, retaliation and other unlawful acts.

58. KTPC further failed to adequately supervise its employees, without limitation to Christensen, to ensure (1) that its employees, like Luster, were not subjected to racial harassment or a racially hostile workplace; (2) that complaining employees, like Luster, were not subjected to retaliation; and (3) that complaining employees, like Luster, had an effective complaint mechanism to alert KTPC to the racial harassment, racially hostile workplace and retaliation that Luster experienced.

59. KTPC's failure to exercise due care in training and supervising is employees was a cause-in-fact of Christensen's and others' illegal actions, which in turn caused Luster's damages.

60. Luster requests relief as hereinafter provided.

## REQUESTED RELIEF

WHEREFORE, Luster respectfully requests that this honorable Court enter judgment for him on his complaint against defendants, jointly and severally, and provide the following relief:

A. A declaratory judgment that the actions complained of herein are unlawful and violate 42 U.S.C. §§ 1981 and 1988;

B. An order that defendants, jointly and severally, pay all damages Luster sustained as a result of its illegal conduct, without limitation to damages for back pay, lost wages and benefits, front pay, anxiety, emotional distress, humiliation, embarrassment, and

mental aguish, together with pre- and post-judgment interest and other statutory penalties, plus punitive damages;

C.  An order that defendants pay the costs of this action, including reasonable attorneys' fees and expert fees to extent available under federal and state laws; and

D.  Such other and further legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Luster hereby requests a jury trial on all issues so triable pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

Dated: April 24, 2012.

> PETERSON, JOHNSON & MURRAY, S.C.
> Attorneys for Plaintiff
>
> */s/ William F. Sulton*
> William F. Sulton
> State Bar No. 1070600
> 733 North Van Buren Street, Floor 6
> Milwaukee, Wisconsin 53202
> Telephone: (414) 278-8800
> Facsimile: (414) 278-0920
> Email: wsulton@pjmlaw.com